**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**LEGIER AND MATERNE, ET AL.**                                   **CIVIL ACTION**

**VERSUS**                                                                    **NO.03-0278**

**GREAT PLAINS SOFTWARE, INC.**                         **SECTION "K" (1)**

Before the Court are Defendant's *Daubert* Motion To Exclude Testimony Of Sam Rhodes And William Legier (Rec. Doc. 109) and Plaintiffs' Motion To Strike the Proposed Testimony Of George "Buddy" Long, III (Rec. Doc. 113). Having reviewed the memoranda, the pleadings, the relevant law, and having heard oral argument, the Court **DENIES** both motions.

**BACKGROUND**

This matter arises out of a software distribution contract dispute. Defendant Great Plains Software, Inc. is the developer, owner, and licensor of accounting and financial management software for use on microcomputers. Great Plains' software is licensed and distributed through various authorized resellers, such as plaintiffs Legier and Materne, APAC, and Automation, Inc., who are called Partners. This Court provided a detailed background of this matter in its prior rulings; thus, will refrain from providing same in this motion.

**LEGAL STANDARD**

1

Plaintiff  challenges the experts' opinion as unreliable under *Daubert v. Merrell Dow Pharmaceuticals* and Rule 702 of the Federal Rules of Evidence, the latter of which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  The current version of Rule 702 was enacted in response to the Supreme Court's opinion in *Daubert*, which held that, before an expert is allowed to testify, the trial court must assess the reliability of the methodology used by the proposed expert and the relevance of the testimony to the facts at issue.

Under *Daubert*, the proponent of the evidence must first prove that the offered testimony is based on sufficient facts or data.  *See* Fed. R. Evid. 702.  Next, the party must "demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable.... The expert's assurances that he has utilized generally accepted scientific methodology is insufficient." *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). The proponent of the evidence must prove the testimony's reliability by a preponderance of the evidence. *Id.*

In *Daubert*, the Supreme Court identified a non-exclusive list of factors for a district court to consider in determining reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error; and (4) the general acceptance of the methodology in the scientific community. *Daubert*, 509 U.S. at 593-95. A district court must focus on methodology, not conclusions. In *Kumho Tire v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167 (1999), the Court cautioned that the district court

2

must ensure "that an expert, whether basing testimony upon professional studies or personal experiences, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tires*, 526 U.S. at 152. After the proponent of the expert testimony has carried her burden of showing reliability, the party must also prove the expert opinions' relevance. That is, that the experts' opinions have "a valid ... connection to the pertinent inquiry." *Daubert*, 509 U.S. at 592.

## ANALYSIS

The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. *See Daubert,* 509 U.S. at 596. As the *Daubert* Court noted, "[vigorous cross- examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to " 'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration." ' *United States v. 14.38 Acres of Land, Mor or Less Sit. in Leflore County, Miss.* 80 F.3d 1074, 1077 (5th Cir.1996) (quoting *Viterbo v. Dow Chemical Co.,* 826 F.2d 420, 422 (5th Cir.1987). *Scordill,* at *3. With these parameters in mind the Court will now term to the substantive motions.

## DEFENDANT'S DAUBERT CHALLANGE

Sam Rhodes, plaintiffs' economic expert witness, submitted his expert report on December 15, 2003.  He submitted a second expert report on February 18, 2005 which is similar in form and methodology; however, projecting greater losses suffered by LM than in its previous report.  In the second report, Mr. Rhodes concluded damages in the amount of $6.8 to $14.9 million, excluding lost profits related to "exclusivity sales" being calculated by Mr. Legier.  The Court has already denied defendant's Daubert Motion to Exclude Testimony of Sam Rhodes on June 30, 2004 (Rec.Doc.82).  The gravamen of defendant's challenge in the prior motion was a condemnation of Rhodes' reliance upon financial projections created by Charles LeMaire. Defendant argued that an expert who relies on the projections of a third party, without independent verification, cannot satisfy Daubert's reliability prong.  This Court disagreed for several reasons.  Morever, the Court found Rhodes examined the reliability of LeMaire's projections by independently reviewing the past financial records of the company.

Mr. Legier, a Certified Public Accountant, is the managing director for Legier and Materne.  He submitted a report dated February 16, 2005 providing his own opinions as to the amount of lost profits and business value of LM, as well as other costs incurred by LM.  He concluded plaintiffs' incurred lost profits and business value, along with other costs, range from $21,810,000 to $23,170,000.

Defendant asserts several changes have taken place since the Court's last ruling on its *Daubert* motion:1) Rhodes and Legier have ignored actual sales data for total revenue generated by the sale of Great Plains products from 2000-2005 and that a comparison of the projections and the actual sales revenue were significantly higher than what came to fruition; 2) Charles LeMaire (upon whom Rhodes relies) has since stated that his assumptions regarding the renewal

4

of the contract and the structure of the projects were not correct; 3) the failure of Rhodes and

Legier to consider objective data prepared by disinterested third parties reflecting the market

trends during the 2000-2005 time frame; 4) expert reports ignore LM's obligation to "outsource"

much of its IT business to a third party in exchange for a ten percent referral fee.  Finally,

defendant's second major focus of its *Daubert* challenge is that the opinion of both experts

assume facts that have not and cannot be established at trial.

Plaintiffs respond that much of defendant's argument was raised before.  Furthermore,

plaintiffs point out that recognized methodology does not take into account future events such as

post-valuation sales when determining business value.  As to Mr. LeMaire's changed opinion,

plaintiffs point out that he is now a GP partner, thus, questioning the reliability of this new

testimony.  Plaintiffs contend that Legier's independent verification was based upon his personal

knowledge of LeMaire's professional reputation.  Plaintiffs argue the contractual obligation

between LM and 121 MICRO regarding "outsourcing" occurred well after GP had committed its

wrongdoing.  As to the "fit argument," plaintiffs contend that GP bases its opinion on its own

factual determinations and eliminates the fact finder's ability to reach its own conclusion by

accepting or rejecting either parties' version of the events.

The Court has considered the methodology of Mr. Rhodes' report  in its previous ruling

and found it to be reliable.  Furthermore, Mr. LeMaire's new testimony does not sufficiently

sway the Court's mind, as to make Mr. Rhodes' testimony inadmissable.  The jury can consider

Mr. LeMaire's new subsequent testimony and consider it in light of Mr. Rhodes' current expert

report.  Although Mr. Legier's report was not previously before the Court, it too refers to Mr.

LeMaire's projections which were deemed reasonable and reliable.  Furthermore, defendant

provides very little basis for its objection to Mr. Legier's Report.  As to the "fit" argument of

defendant, the facts are still undeterminable at this time.  Thus the expert reports are allowed

subject to the factual findings by the jury.  Thus, defendant's *Daubert* Challenge is **HEREBY**

**DENIED**.

## PLAINTIFFS' DAUBERT CHALLENGE

Plaintiffs bring this *Daubert* challenge against defendant's economic expert, Mr. Long, a

Certified Public Accountant.  Mr. Long's report focuses upon alleged damages sustained by LM

and whether LM's  information technology (IT) division was damaged financially as a result of

the change in their commercial relationship with Great Plains Software.  Mr. Long produced his

initial report on January 12, 2004 and his second report on April 5, 2005.  The Court will only

consider defendant's second report, as defendant states it supercedes his first and will not be

rendering the first report at trial.  Mr. Long concludes that L&M's IT department essentially

dissolved in January 2000 due to several factors, and that these factors resulted in L&M IT's loss

of its ability to function as a profitable extension of L&M.  These factors, as identified by Mr.

Long, were 1) loss of trained workforce; 2) failed acquisition; 3) declining industry market

conditions; and 4) dissatisfied customers.  Mr. Long opines it was the combination of these

factors that resulted in the demise of L&M, IT, and not the change in the commercial

relationship with GP.  Part II of Mr. Long's report makes comments on Mr. Rhodes' reports.

Plaintiffs attack the credibility and the methodology of Mr. Long's report.  Plaintiffs first

allege plagiarism, as a paragraph in the report and chart were taken from a publication without

any citations. Plaintiffs also attack Mr. Long's reliance on Charles LeMaire whose testimony

conflicted with the testimony of Mr. Legier and because Mr. Long allegedly never read Mr.

Lemaire's deposition before incorporating it into his expert report.  Furthermore, plaintiffs attack the methodology of Mr. Long, as he criticized the valuation of the business as determined by plaintiffs' experts.  In doing so,  he relied on subsequent events for valuation purposes, such as, future projections, post 2000, for the entire software industry and ignored actual performance of GP.  Plaintiffs also attack the difference in GP sales from the Jan.12, 2004 report which showed a growth rate of 7-8%  while the April 4, 2005 report showed a growth rate of 3.5-7.9% with apparently no new information to support these findings.  Plaintiffs also challenge  Long's "two independent sources" taken from the internet to report GP's growth, instead of actual information which could have been acquired from GP or from pubic record.  Furthermore, plaintiffs attack Long for inappropriately analyzing and excluding infringing sales.

In response, defendant argues that any credibility testimony regarding LeMaire are irrelevant and not grounds for striking.  In his conclusion regarding why LM's IT department failed, Mr. Long believed some testimony over others.  Defendant argues it used subsequent events to show that Mr. Rhodes improperly relied on the revenue projections developed by Mr. LeMarie.  In doing so, Mr. Long compared Mr. LeMaire's projections with the entire industry information and actual sales of Great Plains.  Furthermore, defendant argues the exclusion of Diamond software sales is due to defendant's disagreement on how this contract is read.

A substantial part of plaintiffs' *Daubert* motion is directed towards Mr. Long's credibility which is better left to the trier of fact.  As to the methodology used by Mr. Long in criticizing plaintiffs' expert, the Court acknowledges that valuing a business at a certain point in time usually does not include subsequent events beyond that certain point in time.  However, the Court cannot state that events that occurred post 2000 are not pertinent to calculating damages in

this lawsuit nor will it carve out specific criticisms made by Mr. Long.  It appears to the Court that the main objective of Mr. Long's report was not to provide a business valuation of LM at a certain period of time, as defendant states in its opposition that Mr. Long was retained to render an opinion as to why LM's IT department failed.  Thus, it was only in Mr. Long's criticism of plaintiffs' experts that he utilized subsequent events.

A large majority of the fact issues and legal issues in this case are unresolved which makes it more likely that the parties will rely upon their own version of the facts and interpretation of the contract which necessarily influences the expert reports before the Court. Accordingly, as stated above, a district court must defer to"'the jury's role as the proper arbiter of disputes between conflicting opinions.  As a general rule, questions relating to the bases and sources of an expert's opinion rather than its admissibility and should be left for the jury's consideration."'  This particular case warrants the jury's role as arbiter; thus, both parties' motions are denied.

Accordingly,

**IT IS ORDERED** that Defendant's *Daubert* Motion To Exclude Testimony Of Sam Rhodes And William Legier (Rec. Doc. 109) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion To Strike the Proposed Testimony Of George "Buddy" Long, III (Rec. Doc. 113) is **DENIED**.

New Orleans, Louisiana, this __3rd__ day of August, 2005.